**U.S. BANK NATIONAL ASSOCIATION, Plaintiff–Appellant,**

v.

**STERNE, AGEE & LEACH, INC., Defendant–Appellee.**

No. 06–35523.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2007.

Filed June 6, 2008.

Peter Scott Ehrlichman, Curt Roy Hineline, Dorsey & Whitney, LLP, Seattle, WA, for Plaintiff–Appellant.

James M. Shaker, Ryan, Swanson & Cleveland, Seattle, WA, J. Michael Rediker, Thomas L. Krebs, Peter J. Tepley, Haskell, Slaughter, Young & Rediker, LLC, Birmingham, AL, for Defendant–Appellee.

BEFORE: McKEOWN and CLIFTON, Circuit Judges, and SCHWARZER, District Judge.*

MEMORANDUM **

U.S. Bank National Association ("USB") appeals the district court's judgment pursuant to Fed.R.Civ.P. 52(c) dismissing its action against Sterne, Agee & Leach, Inc. ("SAL") for violation of the Washington State Securities Act ("WSSA"). Our review of the district court's legal conclusions is de novo. *Price v. United States Navy,* 39 F.3d 1011, 1021 (9th Cir.1994). Because the district court applied the wrong legal standards of materiality and reliance, we vacate the judgment and remand for appropriate proceedings.

USB, standing in the shoes of the original investors by reason of the assignment of their claims, alleged that SAL sold securities issued by the Eel River Investment Company ("ERIC") using material misrepresentations or omissions. Specifically, USB alleged that SAL failed to disclose: (1) the litigation, debt, and criminal history of ERIC's president and chairman, Veril Olsen; (2) the dual role of attorney Michael Ross as both counsel to and director of ERIC, in connection with his issuance of an opinion letter respecting ERIC's securities; and (3) the fact that the shares were not lawfully issued under Washington law. After a five-day bench trial, the district court determined that USB failed to establish the requisite elements of its cause of action, namely materiality of any representation or omission, or reliance on the part of the investors. The court dismissed the case with prejudice.

I.

The district court acknowledged that the test of materiality is whether a "reasonable investor" would consider an omitted fact important when making an investment decision. But it then determined that in this case, the reasonable investor is "an institution that is an 'accredited investor' as defined in Rule 501 under the Securities Act of 1933."[1] In this respect, the court erred.

Under the WSSA, "A material fact is one to which a reasonable [person] would attach importance in determining his or her choice of action in the transaction in question." *Guarino v. Interactive Objects, Inc.,* 122 Wash.App. 95, 86 P.3d 1175, 1185 (2004) (citation and internal quotation marks omitted). The WSSA is "patterned after and restates in substantial part the language of the federal Securities Exchange Act of 1934." *Guarino,* 86 P.3d at 1183 (citations omitted). The statute is to be "construed as to ... coordinate the interpretation and administration of [the statute] with the related federal regulation." Wash. Rev.Code. § 21.20.900. Under the federal and Washington securities laws, materiality requires "a substantial likelihood that the disclosures of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Guarino,* 86 P.3d at 1185 (quoting *Basic Inc. v. Levinson,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976))). The standard for materiality does not vary according to the

---

* The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1. The court observed that because "[the investors] placed [their] sole reliance on the creditworthiness of [the] banks ... [i]nformation unrelated to those institutions or to the structure of their obligations to the investors was, in the end, immaterial."

type of investor involved. *Basic,* 485 U.S. at 240, n. 18, 108 S.Ct. 978 (1988) ("We find no authority ... for varying the standard of materiality depending on who brings the action ...."); *see also TSC,* 426 U.S. at 445, 96 S.Ct. 2126 ("The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor.").

In assessing materiality by reference to an institutional investor, the district court departed from the controlling standard. On remand the district court shall apply the standard of the reasonable investor to the evidence in the record, and to such additional relevant evidence offered by the parties.[2]

## II.

The district court concluded that the investors received exactly what they bargained for and had placed their "sole reliance" on the creditworthiness of the banks backing the securities. The court erred in failing to apply a rebuttable presumption of reliance in favor of USB. Although the court referenced a rebuttable presumption, it did not provide any details or reasoning as to what evidence supported its conclusion that SAL had rebutted the presumption of reliance. As this was a bench trial, without those findings, we cannot review the propriety of this conclusion. Further, from the record, we cannot determine whether this conclusory observation concerning reliance was affected by the court's mistaken view of determining materiality with reference to the original investors' status as "accredited investors."

In a case involving an alleged omission, upon a finding of materiality there is a rebuttable presumption that the plaintiff relied on the omission. *Guarino,* 86 P.3d at 1187 (quoting *Morris v. International Yogurt Co.,* 107 Wash.2d 314, 729 P.2d 33, 41 (1986) (in an action alleging the omission of a material fact, proof of nondisclosure of a material fact establishes a presumption of reliance that the defendant may rebut by proving that the plaintiff would have made the same decision if the fact had been disclosed)).[3] Accordingly, if on remand the district court finds that SAL made material omissions of fact, it will have to determine, through specification of relevant evidence, whether SAL rebutted the presumption of reliance. This determination might also require the court to consider additional relevant evidence from the parties.

**VACATED AND REMANDED.**

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. I agree that the district court did not apply the proper standard for materiality, but I see no good reason not to honor its factual finding that the original investors did not actually rely upon defendant or its alleged omissions.

The district court did not overlook the rebuttable presumption in favor of plaintiff on the reliance issue. Its written order made explicit reference to it: "Where an omission forms the basis for the claim, however, positive proof of reliance is not a prerequisite to recovery. Rather, a rebuttable presumption of reliance is created; which defendant can rebut by showing that the plaintiff's decision would have been

---

**2.** Our disposition makes it unnecessary to consider whether the district court entered judgment prematurely before USB had completed presentation of its case, as USB argues on appeal. *See generally Summers v. Delta Air Lines, Inc.,* 508 F.3d 923 (9th Cir.2007).

**3.** While *Morris* arose under the Washington Franchise Investment Protection Act, the court's decision was based on decisions under Rule 10b–5 of the Securities and Exchange Act of 1934.

unaffected even if the omitted fact has been disclosed" (internal quotation marks and citation omitted). There is nothing wrong with that articulation of the presumption, and the majority does not identify anything that is incorrect about it.

The same order subsequently stated an explicit finding that the investors did not actually rely upon the underwriter and instead placed "sole reliance on the creditworthiness of those banks issuing letters of credit or, later acting as Trustee to preserve the financial structure of the deal." That finding necessarily meant that the court found that defendant had overcome the rebuttable presumption. At the hearing when the court announced its decision, the court made that crystal clear: "[C]ontrary to counsel's argument, I do believe the evidence does rebut any rebuttable presumption and assumed reliance in the case of an omission of a material fact. And for that reason the motion is granted."

The majority justifies its disregard of the trial court's finding of non-reliance in two ways, neither of which is persuasive. First, it complains that the district court did not provide details or reasoning to explain what evidence supported the conclusion. As a matter of form, this finding was not more lacking in detail than most factual findings entered by district courts and reviewed by this court. It is not the universal practice—or even all that common—for a trial court to specify the specific evidence or reasoning process that led to a given finding of fact. The majority cites no rule or caselaw that requires more than what the district court stated here.

Besides, this case is not so complicated that we cannot understand the finding or figure out what it was based upon. The trial court concluded, as a finder of fact, that the original investors placed complete faith in the letters of credit and simply did not care about anything else. Although the majority calls this a "conclusory observation," the district court devoted more than two full pages, over half of its analysis, to reciting the evidence in the record that supported the determination. It noted, for example, that the Confidential Private Offering Memorandum prepared following the investors' representatives engaged in extensive negotiations over the deal structure disclosed that "[p]urchasers of the shares should make their decision to invest in the shares *solely upon their assessment of the creditworthiness of the primary credit issuer and the confirming credit issuer*" (emphasis added). The court also cited the credit review summary created on the date of the investment, which stated that "[t]he bonds were purchased solely on the basis of the irrevocable direct pay credit facility issued by Federal Home Loan Bank which guarantees the payment of principal, and interest up to 45 days at a maximum 7.3% annual rate." There is nothing to be gained by remanding this case to the district court for it to restate its conclusion in more detailed terms.

The parties understood the district court's decision, as demonstrated by their arguments on appeal. Plaintiff-appellant U.S. Bank directly attacked the factual finding in question, entitling one section of its opening brief: "The district court erred in holding that [defendant] SAL proved that the investors decisions would have been unaffected by disclosure." The defendant responded in its answering brief by arguing that "the holders did not reasonably rely on any alleged omission." Both parties cited to the record to support their contentions. The parties have challenged the soundness of the finding, not whether it was made in the first place, and that is an issue we should be capable of resolving. The purported lack of detail in the district court's order is not a good

reason for us to punt the issue back to the district court.

The majority's second justification for remanding the case is that it can't tell whether the district court's finding "was affected by the court's view of the original investors as 'accredited investors' for purposes of the materiality determination." By that statement the majority makes the same mistake that it faulted the district court for making—it confuses materiality and reliance. Materiality does not vary according to the type of investor involved, but actual reliance does. The question of reliance turns on the particulars of these investors. Accordingly, it would have been entirely appropriate for the district court, as the finder of fact, to take the original investors' qualifications into account when it determined that the alleged omissions would have had no bearing on their decisions to invest.

I think our decision may be better explained as the result of the majority's skepticism as to the correctness of the trial court's factual finding. The appropriate standard of review of a finding of fact is, of course, the "clearly erroneous" standard. See Fed.R.Civ.P. 52(a)(1); Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 651 F.2d 615, 619 (9th Cir.1981) (holding that questions of materiality, scienter, and reliance in the securities context are reviewed under the "clearly erroneous" standard). The majority has declined to hold that the finding in question was clearly erroneous. If the finding is not clearly erroneous, it should be sustained. Instead, the majority returns the issue to the district court, with the observation that the court might "consider additional relevant evidence from the parties." That observation—which I think is inappropriate—is a key to the majority's thinking. Although it is unwilling or unable to conclude that the finding of non-reliance was clearly erroneous, I suspect that the majority simply doesn't believe that the original investors' decision to invest was not affected by the omissions. I admit to having some doubt about that as well, because it seems so illogical that investors would not care about the omitted facts. But we have to keep in mind that the original investors did not have the advantage of our hindsight. Major financial institutions lost billions of dollars and the venerable Wall Street firm Bear Sterns collapsed almost overnight as a result of the recent "subprime lending" credit crisis, after enormous amounts of money were lent and invested based upon confidence in collateral that in retrospect seemed foolhardy. In this case, we cannot help but doubt, after the fact, that the investors could have had such disregard for omitted information concerning, for example, Olsen's background. But viewed in context, it is not so mysterious. The investors may have felt fully protected by the Credit Facility—as, indeed, they would have been, had U.S. Bank not made a mistake in its capacity as Trustee. Whether that is what actually happened, I do not really know—I do not have the same view of the evidence that the district court had. I am satisfied, though, that the finding reached by the district court was supported by sufficient evidence and was not clearly erroneous.

Because I conclude that finding was not clearly erroneous and that the district court did not err in not hearing the additional testimony of Mr. Olsen, which would have spoken to materiality but not to actual reliance by the investors, I would affirm the judgment of the district court. The majority's decision to remand the case for further proceedings instead will, I expect, waste time and money, with little likelihood of a different result. Thus, I dissent.