FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 01 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| US BANK NATIONAL ASSOCIATION, | No. 09-35639 |
| Plaintiff - Appellant, | D.C. No. 3:04-cv-05623-RBL |
| v. | |
| EEL RIVER INVESTMENT COMPANY, a Washington corporation, | MEMORANDUM[*] |
| Defendant, and | |
| STERNE AGEE AND LEACH INC., an Alabama corporation, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted August 4, 2010
Seattle, Washington

Before: NOONAN, THOMPSON** and BERZON, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

** Judge Thompson concurred in the decision of the court but died before the decision was filed.

This case was tried in 2006 and on appeal to us by the loser, U.S. Bank, was remanded with directions by this court. As we then noted, the key issues were (1) the materiality of the omissions made by the offeror of the securities, Sterne, Agee and Leach, Inc. (SAL) and (2) the reliance of the investors upon the information furnished. *U.S. Bank Nat. Ass'n v. Sterne, Agee & Leach, Inc.*, 281 Fed. App'x 740 (2008) (unpublished).

On remand, after a second bench trial, U.S. Bank again lost and again appeals.

In 2005, U.S. Bank, the trustee responsible for holding the investment collateral, stepped into the shoes of the investors by purchasing their shares. U.S. Bank's purchase of the shares was part of a settlement to avoid liability for its own alleged negligence as the trustee that lost control of the collateral. With this nimble move, U.S. Bank now speaks as the allegedly defrauded investors, who were told nothing about the criminal past of Buck Olsen, the entrepreneur for whose benefit SAL arranged the financing.

As this court stated in its first opinion in this case, if material facts were omitted by SAL, then SAL had the burden of showing that the investors would not have acted differently if they had known the omitted facts. 281 Fed. App'x at 742.

2

We focus on the issue that is dispositive. The investors first bought the securities on May 21, 2002. They were informed in the offering memorandum:

> "No financial or operating information with respect to the Issuer is included herein."
> "The Issuer was incorporated in March 2002. Accordingly it has no operating history upon which you can evaluate its prospects."
> "Purchasers of the Shares should make their decisions to invest in the Shares solely upon their assessment of the creditworthiness of the Primary Credit Issuer and the Confirming Credit Issuer."
> "No attempt is made in this Offering Memorandum to describe the Issuer in a manner that would enable purchasers of the Shares to assess the creditworthiness of the Issuer."
> "Accordingly, in deciding whether to purchase the Shares, potential investors should not rely upon the ability of the Isser to make the required payment sunder the Indenture."
> "PROSPECTIVE PURCHASERS OF THE SHARES SHOULD LOOK ONLY TO THE CREDIT FACILITY AND NOT THE CREDIT OF THE ISSUER AS THE SOURCE OF PAYMENT OF THE PRINCIPAL OF, INTEREST ON AND PURCHASE PRICE OF THE SHARE."

In the face of these statements, no reasonable investor would have believed that Olsen's reputation was relevant.

Four months later, in September of 2002, SAL proposed to amend the original agreement. The amendment substantially changed the security that the Credit Facility afforded the investors and gave substantially more discretion to Olsen in the investment of the funds held as security at U.S. Bank. The long-term Moody's rating of the security was reduced two notches from Aaa to Aa2. The

3

amendment did not give Olsen unlimited investment authority.  The changes were submitted to the investors, who could have terminated their investment but, on September 18, 2002, chose to stay aboard.  We construe the amendment as a new sale.  *See Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646, 651 (9th Cir. 1988) (sale of securities takes place where investor makes a new "investment decision").

Coming so soon after the May sale and proposed as an amendment to its terms, the new sale contained no statements repudiating the original declarations rejecting any reliance on the issuer.  Both in May and September, the investors acted through a financial adviser, John Goetz.  His testimony as to what he looked to was not consistent.  At times he testified that if he had known Olsen's past, his investment decision would have been different.  He also testified that it would have made no difference.  His deposition reads:

> Q.      And likewise when the first amendment to the trust and deposit agreement was executed, you understood that again you would be looking solely to the account, the assets that were, in essence, locked up, right?
> A.      Yes.
> Q.      And it is your testimony that because you thought this money was essentially locked up, that you had not been concerned about the prior history or lack of prior history of Eel River Investments and possibly may or may not have been concerned about who Veril Olsen was, the president of the company and/or who the directors and officers of the company were, correct?

4

A.    Yes.

The factfinder had the task of deciding what parts of Goetz's testimony to credit.  The deposition testimony supports the conclusion that the investors' decision would not have been affected by disclosure of Olsen's background.  We cannot say that the factfinder's acceptance of this view of Goetz's testimony was clear error.  *See Arrington v. Merrill Lynch, Price Fenner, & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir. 1981) (questions of materiality and reliance reviewed under the clear error standard).

Separately, U.S. Bank claimed that SAL omitted to disclose that the shares were defectively issued under Washington's corporations law.  The district court ruled that the alleged omissions as to the legality of the shares were not material.  Even assuming that the shares were not properly issued, they were enforceable under Washington contract law.  *See In re Spokane Concrete Prods., Inc.*, 126 Wash. 2d 269 (1995).  The district court did not clearly err in finding that the investment decision of a reasonable investor would not have been affected by the technical defects in the issuance of the shares.

For these reasons, the judgment of the district court is AFFIRMED.