

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 0 3 2019
Fairhurst, CJ
CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct. 3, 2019
Susan L. Carlson
Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF SEATTLE,<br><br>Petitioner,<br><br>v.<br><br>CREDIT SUISSE SECURITIES (USA) LLC f/k/a CREDIT SUISSE FIRST BOSTON LLC, a Delaware limited liability company; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., a Delaware corporation; and CREDIT SUISSE MANAGEMENT (USA) LLC f/k/a CREDIT SUISSE FIRST BOSTON MANAGEMENT LLC, a Delaware limited liability company,<br><br>Respondents. | No. 95420-8 (consol. 95436-4)<br><br>En Banc<br><br>Filed    OCT 0 3 2019 |
| FEDERAL HOME LOAN BANK OF SEATTLE,<br><br>Petitioner,<br><br>v.<br><br>BARCLAYS CAPITAL INC., a Connecticut corporation; BCAP LLC, a Delaware limited liability company; and BARCLAYS BANK PLC, a public limited company registered in England and Wales,<br><br>Respondents. | |

WIGGINS, J.—The question before the court is whether the Securities Act of Washington requires a plaintiff suing for a violation of RCW 21.20.010(2) to prove reliance. We hold that a plaintiff need not prove reliance to prevail under RCW 21.20.010(2). We therefore reverse the decisions of the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL HISTORY

This case emerges out of the financial crisis and ensuing "Great Recession of 2007-2009." In 2005 and 2007, Federal Home Loan Bank of Seattle purchased certificates for residential-mortgage-backed securities (RMBS) from Credit Suisse, an investment bank, for a total of $248 million. Federal Home Loan also purchased, in 2007 and 2008, certificates for RMBS from Barclays, for a total cost of over $660 million.

RMBS are based on payments made by borrowers into a mortgage pool; nothing backs an RMBS other than payments made by mortgagors. In the run-up to the Great Recession, mortgage-backed securities (MBS), including the RMBS at issue here, were pooled with other securities into collateralized debt obligations (CDOs). Michael Legg & Jason Harris, *How the American Dream Became a Global Nightmare: An Analysis of the Causes of the Global Financial Crisis*, 32 U.N.S.W. L.J. 350, 353 (2009). Many of these MBS were subprime, but their poor credit ratings were effectively concealed when they were pooled with other securities in the CDOs. *Id.* at 353-54. This structure could not hold, and the losses caused by the subprime mortgages in the MBS helped to precipitate the Great Recession of 2007-2009. *Id.* at

2

354-57; *see also* John C. Coffee, Jr., *What Went Wrong: An Initial Inquiry into the Causes of the 2008 Financial Crisis*, 9 J. CORP. L. STUD. 1, 4-7 (2009).

In 2009, Federal Home Loan separately brought suit under the Securities Act against Credit Suisse and Barclays. Federal Home Loan alleged that Credit Suisse and Barclays each had made untrue or misleading statements in violation of the Securities Act, RCW 21.20.010(2). RCW 21.20.010(2) makes it unlawful for any seller or purchaser of securities, in connection with a sale, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

Federal Home Loan's allegations were lengthy. Federal Home Loan claimed that Credit Suisse made false statements concerning the loan-to-value ratios (LTVs) for at least 2,392 of the 6,884 mortgage loans in in the mortgage pool, overstating their value by at least 105 percent. Federal Home Loan similarly alleged that Barclays overstated the LTVs of 2,810 of the 6,481 mortgage loans in its pool by at least 105 percent. Federal Home Loan also alleged that both Credit Suisse and Barclays made false statements about the occupancy status of the properties in the collateral pool and misrepresented the quality of their underwriting standards.

In each case, Credit Suisse and Barclays moved for summary judgment. The trial court granted Credit Suisse's motion because, it concluded, reliance was a requirement of an action under the Securities Act, RCW 21.20.010(2), and there was no dispute of material fact there: Federal Home Loan had not relied, the court

3

concluded, on any statements made by Credit Suisse. The trial court granted Barclays' motion because, although Federal Home Loan had relied on Barclays' statements, that reliance was unreasonable as a matter of law.

Federal Home Loan appealed both cases, and the Court of Appeals affirmed in each, holding that reasonable reliance was required. *Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA) LLC*, No. 75779-2-I, slip op. at 3, 7 (Wash. Ct. App. Dec. 11, 2017) (unpublished) (hereinafter *Credit Suisse*), https://www.courts.wa.gov/opinions/pdf/757792.pdf; *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*, 1 Wn. App. 2d 551, 556, 576-77, 406 P.3d 686 (2017) (hereinafter *Barclays*).

Federal Home Loan sought review of each case in this court, arguing that reliance is not a requirement. We consolidated the cases and granted review.

## STANDARD OF REVIEW

We review grants of summary judgment de novo. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). We also review the meaning of statutes de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

## ANALYSIS

Our Securities Act was passed in 1959. The legislature modeled the Securities Act on the Uniform Securities Act of 1956. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 125, 744 P.2d 1032 (1987); *see also* Unif. Sec. Act of 1976, 7C U.L.A. 475-76 (2018) (Table of Jurisdictions) (listing the states that have adopted the Uniform Securities Act of 1956 and including Washington); *Go2Net, Inc. v.*

*FreeYellow.com, Inc.*, 158 Wn.2d 247, 257, 143 P.3d 590 (2006) ("The [Securities] Act is patterned after the Uniform Securities Act of 1956.").

The sole question in this case is whether a private plaintiff bringing an action for a violation of RCW 21.20.010(2) must prove reliance. We answer this question in the negative: reliance is *not* an element of a private securities claim under subsection .010(2).

In so doing, we first turn to the bedrock principle of statutory interpretation: plain language. Concluding that the plain language of .010(2) does not require proof of reliance, we next move on to the purpose of the Securities Act. We then resolve the remaining arguments of Credit Suisse and Barclays (the Respondents).

I. The plain language of RCW 21.20.010(2) does not require a private plaintiff to prove reasonable reliance

The objective of statutory interpretation is to ascertain and carry out the intent of the legislature. *Campbell & Gwinn*, 146 Wn.2d at 9-10. "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* Additionally, because the purpose of the Securities Act is to protect the public, "it is appropriate to construe the statute broadly in order to maximize the protection offered." *McClellan v. Sundholm*, 89 Wn.2d 527,533, 574 P.2d 371 (1978). Any plain language analysis of the Securities Act must be undertaken with this in mind.

As is immediately clear, the plain language of RCW 21.20.010 does not require reasonable reliance:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
(1) To employ any device, scheme, or artifice to defraud;
(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

No reliance—neither term nor concept—appears in RCW 21.20.010(2). Indeed it appears nowhere in the entirety of .010. Nor does reliance appear in the identical section in section 101 of the Uniform Securities Act of 1956, on which this provision is modeled. The plain language of this provision thus does not include reliance as part of any claim made under it. On the face of the statute, proof of reliance is not required.

We also look to additional and related sections of the act in which RCW 21.20.010 is found to ascertain its meaning. *Campbell & Gwinn,* 146 Wn.2d at 11-12. Other sections of the Securities Act do not require proof of reliance. Crucially, in the section that establishes a private right of action against sellers of securities—the very kind of action brought here—the legislature did not require reliance. RCW 21.20.430(1).[1] Indeed, in the commentary to the corresponding (albeit differently

---

[1] RCW 21.20.430(1) states:

(1) Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010, 21.20.140 (1) or (2), or 21.20.180 through 21.20.230, is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security. Damages are the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.

structured and worded) provision in the Uniform Securities Act of 1956, the drafters expressly ruled out reliance as a requirement for a private cause of action. LOUIS LOSS, COMMENTARY ON THE UNIFORM SECURITIES ACT 148 (1976) (stating unequivocally that language in section 410 of the 1956 Act "is not intended as a requirement that the buyer prove *reliance* on [an] untrue statement or . . . omission" (reproducing the original drafters' comments to the 1956 act)).

Barclays argues that the use of the word "fraud" in RCW 21.20.010(1) and (3) indicates that we must read reasonable reliance into the statute, including into subsection .010(2). Leaving aside that Federal Home Loan sued Barclays and Credit Suisse under subsection (2), not subsection (1) or (3), this reading does not withstand close scrutiny. Subsection (1) prohibits the *act* of "*employ[ing]* any device, scheme, or artifice *to* defraud"—not common law fraud. RCW 21.20.010(1) (emphasis added). In other words, subsection (1) does not take into account whether fraud was committed—only whether an act that could defraud was undertaken. The same is true of subsection (3), which similarly prohibits "*engag[ing]* in any *act* . . . which *operates* or *would operate* as a fraud or deceit upon any person." *Id.* at (3) (emphasis added).

Barclays' argument flies in the face of both precedent and the history of the act. In *Kittilson v. Ford*, we expressly rejected the argument that the words "fraud" and "misrepresentation," present in the original version of RCW 21.20.430, should be given their common law meanings. 93 Wn.2d 223, 225, 608 P.2d 264 (1980). Although *Kittilson* dealt with whether the Securities Act requires proof of scienter, not reasonable reliance, the same principle applies here: we do not necessarily read

7

common law fraud requirements into the word "fraud" in the Securities Act. *See id.* That the current version of section .430 lacks any reference to fraud or misrepresentation reinforces this point. Had the legislature wanted to require all of the elements of fraud in private Securities Act claims, it would have expressly done so when revising the portion of the statute devoted to private causes of action. It did not. Instead, it removed references to fraud altogether. *See* LAWS OF 1977, 1st Ex. Sess., ch. 172, § 4.

The dissent argues that the use of the phrase "in connection with" in RCW 21.20.010 "establishes a causal connection requirement." Dissent at 28. The dissent relies on federal case law to make this argument. *Id.* As discussed below in Section III.B, we should not rely so heavily on federal law while interpreting our own Securities Act. In light of that, there is no reason to read a reliance requirement into the term "in connection with." The phrase clearly demarcates only when .010 applies: when there is a sale or purchase of a security. RCW 21.20.010. In essence, it means that merely misstating or lying about some material fact, outside the context of a securities transaction, does *not* expose one to liability under RCW 21.20.010. *See id.* Even when *Hines* discusses reliance, it discusses it distinctly from the "in connection with" language. *Hines v. Data Line Sys. Inc.,* 114 Wn.2d 127, 134, 787 P.2d 8 (1990) (". . . they relied on the misrepresentations *in connection with* the sale of the securities" (emphasis added)). The dissent cannot make "in connection with" mean "reliance."

Overall, the plain language is clear: RCW 21.20.010(2) unambiguously does not require reliance. It is therefore unnecessary to employ legislative history or other aids to statutory construction. *See Campbell & Gwinn,* 146 Wn.2d at 9-10.[2]

II. Our holding furthers the purpose of the Securities Act

We have long acknowledged that the Securities Act "has as its purpose broad protection of the public," *McClellan,* 89 Wn.2d at 533, and that its main purpose is to protect investors, *Haberman,* 109 Wn.2d at 125-26. Holding that reliance is not required furthers these goals. After all, an investor who has *not* relied on a misrepresentation can still be harmed by that misrepresentation. "When fraud [or misrepresentations[3] are] revealed, the price of [a] firm's equity declines and its shareholders lose money." Urska Velikonja, *The Cost of Securities Fraud,* 54 WM. & MARY L. REV. 1887, 1901 (2013). For instance, "[a]bout one-third of the firms that are targets of SEC enforcement actions for misreporting file for bankruptcy." *Id.* at 1912.

---

[2] A fragmentary piece of tangentially relevant legislative history concerns not the Securities Act itself, but the Franchise Investment Protection Act (FIPA), chapter 19.100 RCW, drafted in 1971, 12 years after the Securities Act. The drafters of the FIPA proposed a definition of fraud and deceit that did not require the elements of common law fraud. *See* Comments on the Proposed Investment Franchise Act, S.B. 755, 42d Leg., 1st Exec. Sess. (Wash. 1971) (on file with Wash. State Archives). This definition was based on the drafters' understanding of the definition of fraud and deceit in the Securities Act's liability provision, section .010. James Fletcher, Franchise Investment Protection Act 15, 19 n.17 (1971) (unpub. research paper, Univ. of Wash. Sch. of Law) (on file with the Wash. State Law Library). Thus, the drafters of the FIPA understood the Securities Act section .010 to have a meaning consistent with the meaning we adopt today.

The proposed definition of fraud and deceit was eliminated from the FIPA before the legislature adopted it. *See* S.B. 755 at 4 (crossing out definition at ¶ 10). Little, if anything, can be gleaned about the Securities Act from a drafter's comments about another statute, in a wholly different title, enacted over a decade later. But the fact remains that the drafters of FIPA understood fraud and deceit consistently with our plain language analysis.

[3] Velikonja discusses fraud and other misrepresentations in her article but primarily uses the word "fraud" as a catchall for both terms. *See, e.g.,* Urska Velikonja, *The Cost of Securities Fraud,* 54 WM. & MARY L. REV. 1887, 1903-12 (2013).

In other words, the misrepresentation itself causes catastrophic loss in the value of the securities. *See id.* This means that a purchaser of securities need not have relied on a misrepresentation to be harmed by it. Once a misrepresentation is revealed, the investor is harmed. This is simply a consequence of the securities marketplace.

Such a scenario is easy to imagine. A seller of securities misrepresents the underlying value of a security. Relying on this, a group of sophisticated investors purchases the security. Its value increases. Another investor—sophisticated or not— also purchases the security, simply because its value has gone up, without relying on any misrepresentations (although the same misrepresentations existed with respect to the sale to them, as well). When misrepresentations are revealed, the value declines. The first group of investors, seeing how they were misled, quickly abandon ship. The value of the security declines further. The first group can recover irrespective of a reliance requirement, because they did, in fact, rely on the misrepresentation. The other investor suffers similar losses—but with a reliance requirement, these investors could not recover.

Recognizing that reliance is not required ensures that those harmed when a seller misrepresents material facts can recover. This tracks the concerns investors, who care about whether they have been harmed by unlawful activity, irrespective of their reliance on that activity. Our refusal to read reliance into the statute therefore furthers the Securities Act's goal of protecting investors. *Haberman,* 109 Wn.2d at 125-26.

Of course, protecting investors is not the only purpose of the Securities Act. RCW 21.20.900 states:

> This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

This section is not contravened by our holding today. Uniformity of the states' laws cannot be achieved by our actions: the states employing the Uniform Securities Act are split on the issue of reliance. *See* 12A JOSEPH C. LONG ET AL., BLUE SKY LAW § 12:5 (perm. ed., rev. vol. 2018) (showing a split between states requiring reliance and those not requiring reliance).

Nor does our holding somehow upset our coordination with federal securities law. As we stated in *Kittilson*, such coordination "does not require *imitation* [of federal law] by this court in construing our act, only that our construction not interfere with the federal scheme." 93 Wn.2d at 227 (emphasis added) (citing *Shermer v. Baker*, 2 Wn. App. 845, 472 P.2d 589 (1970)). In *Kittilson*, we held that scienter is not an element of a claim under RCW 21.20.010. *Id.* We made clear that our holding did not interfere with the federal scheme, even though scienter is an element of a federal securities claim. *Id.* There is no reason to conclude otherwise with respect to reliance— especially given that many other states also lack a reliance requirement. *See* 12A LONG ET AL., *supra*, § 12:5.

11

III.   The Respondents' remaining arguments are unpersuasive

The Respondents propose three more significant arguments why we must read reliance into the Securities Act: that precedent in our state dictates that result; that we must follow federal securities law, and that failing to require reliance will lead to unlimited liability. None persuades.

A. *Precedent does not require proof of reliance*

The Respondents argue that our precedent requires that a private plaintiff in an RCW 21.20.010 civil action show reasonable reliance in order to recover. This is incorrect.

Central to the Respondents' arguments are two cases, one from the Court of Appeals and one from our court: *Shermer* and *Hines*. Respondents rely on *Shermer* as the alleged source of nearly 50 years of precedent, holding that reliance is required in a private Securities Act claim. Respondents also argue that in *Hines* we held that reliance is required in such claims. Neither of these assertions withstands scrutiny.

As a Court of Appeals case, *Shermer* cannot bind us. Just as importantly, *Shermer* does not meaningfully support the Respondents' arguments. In *Shermer*, the Court of Appeals stated that:

> We . . . hold that in an action brought under RCW 21.20.010, a plaintiff
> need neither plead nor prove that defendant intended to deceive him by
> the misrepresentation or omission. It is sufficient that the plaintiff relied
> upon the misrepresentation or omission of a material fact.

2 Wn. App. at 857-58. This does *not* hold that reliance is *necessary* to make out a claim. Quite explicitly, *Shermer* states that reliance is *sufficient* to make out a claim. *Id.* at 858.

*Shermer* did not provide any support or reasoning to impose a reliance requirement in an RCW 21.20.010 case. *See id.* at 857-58. The reason for this becomes apparent when looking to the procedural posture of the case. *Shermer* was concerned with the permissibility of a jury instruction. *Id.* at 856. The question was whether proof of scienter was necessary, as the jury instruction omitted that requirement. *Id.* & n.6. Whether reliance was required was not at issue. *Id.* However, the jury instruction itself included reliance as a requirement. *Id.* & n.6. Thus, when the court stated that reliance was sufficient, it was merely indicating that without proof of scienter, the jury instruction was nevertheless permissible. *Id.* at 858. It did not purport to announce reliance was required for all claims brought under RCW 21.20.010. *See id.* This procedural nuance makes clear that *Shermer* did not hold that reliance is a requirement of a private securities claim.

Finally, *Shermer* discussed reliance in the context of whether an implied private cause of action against a securities buyer existed under RCW 21.20.010—a cause of action that *Shermer* created. *Id.* at 847, 850. *Shermer's* implied private cause of action no longer exists. It was superseded by the 1975 amendments to the Securities Act, which replaced the old version of RCW 21.20.430 and added a statutory private right of action against buyers of securities, not only sellers, as had been the case when *Shermer* was decided in 1970. LAWS OF 1975, 1st Ex. Sess., ch. 84, § 24. The current

version of .430 contains an express statutory right of action against *both* sellers and buyers for violations of .010. RCW 21.20.430(1), (2). Thus any light that *Shermer* might shed on the modern, statutory cause of action under .010 and .430 is limited, if not entirely inapplicable, originating as it did in a wholly different context.

Nor does *Hines* support the Respondents' arguments. We did *not* hold in *Hines* that proof of reliance is required. *See* 114 Wn.2d at 134-35. At issue in *Hines* was whether a plaintiff must prove that the defendant's misrepresentations proximately caused the decline in the value of stock in order to make out a claim under RCW 21.20.010. *Id.* at 134. In answering that question in the negative, the *Hines* court stated that "[t]he investors need only show that the misrepresentations were material and that they relied on the misrepresentations in connection with the sale of the securities." *Id. Hines* provided no authority for this statement, nor any analysis supporting this assertion. It is simply there, unadorned.

Contrary to the assertions of the Respondents, this statement is not a holding of the case; it is dictum. It had nothing to do with the issue of the case, which was whether proximate cause must be proved. *Hines*, 114 Wn.2d at 134. Further, just as in *Shermer*, *Hines* never stated that reliance is necessary—rather, it indicates only that reliance is sufficient. *Id.* "Need only show" is not the same as "must show." The Respondents cannot use *Hines* to argue that we have long held that reliance is a requirement.  Indeed, *Hines* went on to make clear that only misrepresentation is required: "The violation is in the misrepresentation itself." *Id.* at 135. The act of the defendant matters, not whether the plaintiff relied on that act. *See id.*

14

We reaffirmed that *Hines* did not create a reliance requirement in subsequent cases. In *Go2Net,* we repeated that "[s]imply put, a seller's 'violation [of the Securities Act] is in the misrepresentation itself.'" 158 Wn.2d at 253 (quoting *Hines,* 114 Wn.2d at 135). This dovetails with the plain language reading of RCW 21.20.010: it is the misrepresentation that violates the law. More significantly still, in *Kinney v. Cook,* we stated unequivocally that RCW 21.20.010 "has two essential elements: (1) a fraudulent or deceitful *act* committed (2) in 'connection with the offer, sale or purchase of any security.'" 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (emphasis added) (quoting RCW 21.20.010). Reliance is never mentioned.[4] This decision, coming 17 years after *Hines,* clears up any confusion: if *Hines* required reliance, *Kinney* would have included reliance when discussing the "essential elements" of an RCW 21.20.010 claim. But *Kinney* did no such thing. Today we reaffirm this line of cases: reliance is not required in a private Securities Act claim brought under RCW 21.20.010.

The dissent, in addition to agreeing with the Respondents' arguments, also cites appellate and federal cases that employ a reliance requirement in deciding Securities Act claims, arguing that we too should require reliance because many courts have employed a reliance requirement in the past. Dissent at 9-19. These citations cannot disturb the plain meaning of RCW 21.20.010. Appellate court opinions

---

[4] As discussed in Part I, *supra,* with respect to RCW 21.20.010, the inclusion of the word "act" means that *Kinney* did not require all of the elements of common law fraud or deceit. Rather, it merely requires an action be taken by the defendant, not that the plaintiff relied on it.

are, as the dissent notes, not binding on us. Dissent at 9. Unpublished Court of Appeals decisions, as well as federal decisions, cannot bind courts of this state when interpreting Washington statutes.[5] *In re Elliott,* 74 Wn.2d 600, 602, 446 P.2d 347 (1968) ("[S]tate courts are not bound by federal court interpretations of state statutes.").

More importantly, just because a number of state appellate courts and federal courts have *acted on their belief* that the Securities Act requires proof of reliance in private suits does not make it so. Statutory interpretation is not a numbers game in which the number of nonbinding courts that have assumed an inaccurate meaning of a statute matters more than what a statute actually says. Our purpose is to arrive at the correct interpretation—even if that requires our correcting the course of nonbinding courts. And the statutory language indicates that these nonbinding courts, as well as the dissent, are wrong.

Finally, the dissent relies heavily on *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.,* 180 Wn.2d 954, 331 P.3d 29 (2014), to argue that we have, since *Hines,* expressly indicated that reliance is required. Dissent at 22-23.

---

[5] The dissent problematically treats unpublished cases as meaningful *because* they are unpublished. Dissent at 16 ("The fact that the Court of Appeals declined to publish [a decision stating reliance is required] shows that it considered the analysis not new, not clarifying, and not important."). That is paradoxical: because a decision is not important, it becomes, in the dissent's eyes, important. This degrades the distinction between published and unpublished decisions.

Similar problems exist with respect to the dissent's treatment of federal cases. For instance, the dissent treats the fact that the Ninth Circuit once declined in an unpublished case to certify the question of whether reliance is required to this court as evidence that the question was settled. Dissent at 19. But the decision made by a federal court not to certify a question of state law in an unpublished federal appellate opinion says nothing about the nature of the law itself.

But *FutureSelect* did nothing of the sort. In *FutureSelect,* we adopted section 148 of *Restatement (Second) of Conflict of Laws* (Am. Law Inst. 1971) to resolve choice of law questions with respect to securities claims. 180 Wn.2d at 967-68. Section 148 sets out various factors used to conduct that choice-of-law analysis. *Id.* at 969. One of these factors, as the dissent points out, is "the place where the plaintiff acted in reliance on the representations." *Id.* The dissent concludes that "[o]ur adoption of that provision makes the most sense if reliance is indeed an element of a private claim under the Securities Act." Dissent at 23. This is incorrect. The relevance of reliance to choice-of-law analysis does not make it an element of a Washington securities claim. Although we held in *FutureSelect* that we "must consider" where the plaintiff's reliance occurred, that determines only what *law* applies, not whether a violation of the Securities Act occurred. 180 Wn.2d at 969. The dissent attempts to jury-rig an entirely different doctrine into our securities law. We decline to follow this approach.

In light of this, the Respondents' and the dissent's arguments that the legislature has acquiesced to a reliance requirement also lack merit. When looking at the decisions of this court, it is clear that the legislature has not acquiesced in an interpretation that requires reasonable reliance. We did not hold that reliance was required in *Hines. See* 114 Wn.2d at 134. Cases since *Hines* have also shown we do not require reliance. *Go2Net,* 158 Wn.2d at 254; *Kinney,* 159 Wn.2d at 842. What the legislature has acquiesced in, if anything, is our court's not adopting a requirement of reasonable reliance. Legislative acquiescence does not salvage the Respondents' or the dissent's argument. We need not and should not follow federal securities law.

17

The Respondents also argue that we should follow federal securities law. They claim that "[b]y incorporating the [Securities and Exchange Commission] Rule 10b-5 standard for liability, the legislature made reliance an element of a [Securities Act] claim." This is incorrect. Nothing demands that we follow the federal courts' construction of Rule 10b-5.

It is of course true that RCW 21.20.010 is nearly identical to Rule 10b-5. *See Kinney,* 159 Wn.2d at 843 (discussing the similarity). *Compare* 17 C.F.R. § 240.10b-5, *with* RCW 21.20.010. Respondents argue that this means we must follow federal interpretations of Rule 10b-5 when construing our own law because, they claim, whenever our legislature adopts verbatim a federal statute, any federal interpretations of the federal statute flow into our case law.

Irrespective of whether their rule about following federal law is correct as a general matter (an issue we need not decide today), the Respondents' conclusion here is wrong. In *Kittilson,* we rejected the notion that RCW 21.20.010 must track federal interpretations of Rule 10b-5. 93 Wn.2d at 225-26. We reaffirm that conclusion today. Rule 10b-5 is a federal *rule,* not a federal statute—the cases cited by the Respondents have no bearing on it. Further, and more importantly, our legislature *did not adopt Rule 10b-5.* "Washington's securities fraud laws are modeled after the Uniform Securities Act." *Haberman,* 109 Wn.2d at 125. Specifically, the language of

RCW 21.20.010 is identical to section 101 of the Uniform Securities Act of 1956.[6] While the Uniform Act did model section 101 on Rule 10b-5, we adopted the former, not the latter. LOSS, *supra,* at 6-7. And, as noted above, the Uniform Act was *not* meant to require reliance. *Id.* at 147. Thus, that Rule 10b-5 requires reliance cannot control here. It would make no sense for us to hold that we must follow federal Rule 10b-5's reliance requirement when the legislature adopted an act that does not include that very rule.

Even as we are not compelled to follow federal law, there is no reason to voluntarily do so, either. The federal courts require reliance in private securities actions because of federal legislative history. Specifically, the Supreme Court read reliance into Rule 10b-5 because of statements in a Senate report stating, unequivocally, that reliance was required. *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 206, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) ("'[T]he burden is on the plaintiff to show the violation or the fact that the statement was false or misleading, and that he relied thereon to his damage.'" (quoting S. Rep. No. 792, 73d Cong., 2d Sess., at

---

[6] Section 101 of the Uniform Securities Act of 1956 is identical to RCW 21.20.010:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud,
(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

12-13))). Legislative history was therefore central to the Supreme Court's holding. But there is no comparable legislative history with respect to our Securities Act. There is thus no reason to import federal analysis based on federal legislative history into our own law.

Nor do the purposes of federal securities law and our Securities Act align in a way that indicates we should follow federal law. Reliance is important in federal securities law because those laws are meant to "maintain the integrity of secondary securities markets." *Haberman*, 109 Wn.2d at 125-26. Reasonable reliance furthers that goal because reliance requires that *all* parties to a securities transaction behave carefully, helping to keep the market stable. However, the main purpose of our Securities Act is to protect investors. *Id.* The lack of a reliance requirement furthers that protection. We decline to confuse the purpose of the Securities Act with that of federal securities law. Reliance is not required.

B. *Our holding does not open up floodgates of unlimited liability*

The Respondents are also concerned that we create some form of "absolute liability" by holding that reliance is not required. This is not the case. The statute is already designed to prevent that. There is a three-year statute of limitations for any such suit, with the clock starting either at the time of discovery of the violation of .010 or when it should have been discovered with reasonable care. RCW 21.20.430(4)(b). This statute of limitations obviates the Respondents' implicit fear that all purchasers of securities merely unhappy with their return on investment will be able to use the Securities Act to get out of any less-than-ideal situation.

Further, RCW 21.20.010(2) requires plaintiffs to prove there was an "untrue statement of a *material* fact or [an omission of] a *material* fact" (emphasis added). A material fact is one to which a "'reasonable [person] would attach importance in determining [their] choice of action in the transaction in question.'" *Clausing v. DeHart,* 83 Wn.2d 70, 73, 515 P.2d 982 (1973) (internal quotation marks omitted) (quoting *Shermer,* 2 Wn. App. at 855). This materiality requirement prevents the creation of open-ended liability for any misstatement of fact by the defendant. As *Clausing* itself makes clear, the inquiry into materiality is not one taken lightly—so much so that as *Clausing* held, statements do not become material merely because a contract indicates they are so. *Id.* at 75.[7] Thus a minor misstatement that is not of actual import will not provide a plaintiff with grounds for relief.

## CONCLUSION

We hold that reliance is not an element of a private suit brought under RCW 21.20.430 alleging violations of RCW 21.20.010(2). Accordingly, the decisions of the Court of Appeals are reversed, and we remand to trial court for further proceedings consistent with this opinion.

---

[7] In fact, because the cases before us were decided, on summary judgment, solely on the ground that Federal Home Loan could not prove reliance, we do not know what the trial court would have found with respect to the materiality of the Respondents' misrepresentations and omissions. The searching inquiry that we performed in *Clausing* was never made.

_____
Wiggins, J.


WE CONCUR.

_____
Fairhurst, C.J.

_____

_____

_____
Stephens, J.

_____
González, J.

_____
Yu, J.

No. 95420-8
(Consolidated with No. 95436-4)

GORDON MCCLOUD, J. (dissenting)—In one of the two consolidated cases before us, Federal Home Loan Bank of Seattle alleged that it relied on false or misleading statements by Credit Suisse Securities that induced it to purchase hundreds of millions of dollars of securities. But the evidence later showed that such reliance would have been impossible: Federal Home Loan completed its purchase before it received Credit Suisse's final prospectus, the document that contained the allegedly false or misleading statements.

In the other case before us, Federal Home Loan alleged that it relied on false or misleading statements by Barclays Capital that induced it to purchase additional hundreds of millions of dollars of securities. The superior court ruled that any such reliance was unreasonable as a matter of law: when Federal Home Loan made its purchases at the height of the economic crisis in 2008, it "knew too much about the mortgage, the [residential mortgage-backed securities] market, the types of loans

1

involved, and the specific securitizations at issue . . . to reasonably rely" on

Barclays' allegedly false or misleading statements.[1] The superior court therefore

dismissed both claims on summary judgment, and the Court of Appeals affirmed.

Federal Home Loan challenges part of the Court of Appeals ruling, but not the part

holding that its reliance on Barclays' statements was unreasonable as a matter of

law.

Instead, Federal Home Loan now attempts to unravel those transactions and

recover eight percent interest, along with attorney fees, RCW 21.20.430(1), by

arguing it need not prove reliance at all. Thus, the narrow issue before us is

whether a private plaintiff may recover under the "antifraud provision"[2] of the

Securities Act of Washington[3] even though it did not rely on the allegedly

deceptive conduct of which it now complains.[4] The answer, under nearly 50 years

---

[1] Clerk's Papers *Barclays* at 478, 5339-41.

[2] RCW 21.20.010; *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 253, 143 P.3d 590 (2006).

[3] Ch. 21.20 RCW.

[4] Federal Home Loan does not challenge—or even address—the Court of Appeals holding that "reliance" means both actual subjective reliance and objectively reasonable reliance. *See Stewart v. Estate of Steiner*, 122 Wn. App. 258, 265 n.9, 93 P.3d 919 (2004) (citing *Clausing v. DeHart*, 83 Wn.2d 70, 73, 515 P.2d 982 (1973)). Additionally, none of the parties discuss how the reliance element could be established, such as through

2

of case law and legislative acquiescence in these decisions, is no. I therefore

respectfully dissent.

## ANALYSIS

### I. Overview

We do not write on a blank slate. Our state antifraud provision has

consistently been interpreted by state and federal courts to include the element of

reliance. So while the antifraud provision may have been susceptible to different

---

a fraud-on-the-market theory or other presumption. *Cf. Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (applying presumption of reliance, for purposes of federal securities law, under fraud-on-the-market theory); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014) (reaffirming *Basic*); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1301-02 (E.D. Wash. 2007) (court order) (recognizing that "reliance may . . . be presumed in several circumstances" when a claim is brought under Washington's Securities Act). In its two petitions for review, Federal Home Loan challenged only the Court of Appeals holding that the Securities Act required it to plead and prove reliance as part of its claim. That is the sole issue briefed in its supplemental brief. And at oral argument, Federal Home Loan explicitly acknowledged that that was the only argument that it was making in our court. Wash. Supreme Court oral argument, *Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA), LLC*, No. 95420-8 (Oct. 9, 2018), at 11 min., 56 sec. through 13 min., 7 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2018101020. As a result, I address only that narrow issue.

The majority, however, goes beyond the question presented. Even though the parties have carefully avoided asking us to opine on how reliance would be established, or whether it could be presumed, the majority mistakenly assumes that a fraud-on-the-market theory would not be a viable way of proving reliance under our statute and then relies on that assumption to show why, in its view, a reliance element is harmful to investors. Majority at 10-11 (posing a hypothetical scenario). The majority cites no authority in support of that assumption, and I am aware of none.

3

interpretations at one time, that is no longer true. As described in greater depth below, the Court of Appeals first held that reliance is an element of a private state securities fraud claim 49 years ago. It reiterated that view in a series of published decisions in 2004 and 2005, before reaffirming that view once more in 2013, and then again in the instant cases in 2017. Federal courts frequently resolve state securities fraud claims, and they too have consistently treated reliance as an element of our state-law claim—since as far back as 1976. And 29 years ago, in *Hines v. Data Line Systems, Inc.*, 114 Wn.2d 127, 134-35, 787 P.2d 8 (1990), this court explicitly stated that reliance is an element of a state securities fraud claim. Through all of this, the legislature has not intervened to correct any purported misapprehension of the courts.

That is not surprising. The legislature patterned Washington's antifraud provision after federal law, and federal law has always required a showing of reliance. The reliance requirement also finds support in our state statute's text and structure. And finally, our long-standing interpretation complies with the legislature's directive to interpret the Securities Act to protect investors. The reliance requirement ensures that new investors, such as Federal Home Loan, do not unjustifiably recover at the expense of older investors when no aspect of the sellers' allegedly deceptive conduct induced the new buyers' investment. At the

same time, sellers still have every incentive to avoid deceptive conduct—because

the Department of Financial Institutions may take enforcement action against them

for deceptive conduct, whether anybody relied on it or not.

II.   We Have Consistently Identified Washington's Antifraud Provision with Rule 10b-5

The Washington State Securities Act's antifraud provision states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW 21.20.010.

The legislature took that language from the Uniform Securities Act of 1956,

whose drafters had, in turn, taken the language from "Rule 10b-5."[5] *Go2Net, Inc.*

---

[5] The text of Rule 10b-5 "is identical to RCW 21.20.010 except for" the federal rule's interstate commerce element. *Kittilson v. Ford*, 93 Wn.2d 223, 226, 608 P.2d 264 (1980). Rule 10b-5 states:

5

*v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 257, 143 P.3d 590 (2006); LOUIS LOSS, COMMENTARY ON THE UNIFORM SECURITIES ACT 6-7 (1976). When the legislature borrows a statute in that manner—from one source that had borrowed it from another—the meaning of the underlying source matters. *E.g.*, *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 610-11 & nn.17-18, 278 P.3d 157 (2012) (Wiggins, J., dissenting). For that reason, and even though the majority is adamant that Washington "*did not adopt Rule 10b-5*," majority at 19, we have repeatedly identified our antifraud provision with Rule 10b-5. *See Morris v. Int'l Yogurt Co.*, 107 Wn.2d 314, 322-23, 729 P.2d 33 (1986); *Kittilson v. Ford*, 93 Wn.2d 223, 226, 608 P.2d 264 (1980); *Clausing v. DeHart*, 83 Wn.2d 70, 72-73, 515 P.2d 982

---

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

(1973); *see also Shermer v. Baker*, 2 Wn. App. 845, 849-50, 472 P.2d 589 (1970).

And just as we have done before, we may "look to the federal courts' construction

of the securities rule for guidance in interpreting" our state counterpart.[6] *Morris*,

107 Wn.2d at 329-30.

The United States Securities and Exchange Commission promulgated

Rule 10b-5 in 1942 to implement section 10(b) of the Securities Exchange Act of

1934.[7] In enacting the Securities Exchange Act of 1934—25 years before the

Washington Legislature enacted our state Securities Act—Congress intended to

---

[6] We are, of course, not bound by the federal courts' interpretation of our state statute. *See, e.g., Kittilson*, 93 Wn.2d at 227. The federal cases that I cite, however, show the strong justification for Washington's long-standing reliance requirement.

[7] Section 10(b) of the Securities Exchange Act of 1934 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> . . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Pub. L. No. 73-291, 48 Stat. 881.

place the burden on plaintiffs in federal securities fraud claims to plead and prove reliance. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976); *Basic Inc. v. Levinson*, 485 U.S. 224, 257-58, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) (White, J., concurring in part and dissenting in part). For that reason, federal courts, including the United States Supreme Court, have always interpreted Rule 10b-5 to include a reliance requirement.[8] That suggests that our state legislature intended to include a similar reliance requirement when it patterned RCW 21.20.010 after Rule 10b-5.[9]

---

[8] *See, e.g., Halliburton*, 573 U.S. at 263; *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972); *List v. Fashion Park, Inc.*, 340 F.2d 457, 462-63 (2d Cir. 1965); *Kohler v. Kohler Co.*, 208 F. Supp. 808, 823 (E.D. Wis. 1982), *aff'd*, 319 F.2d 634 (7th Cir. 1983); *Mills v. Sarjem Corp.*, 133 F. Supp. 753, 767 (D.N.J. 1955).

[9] Federal Home Loan downplays the significance of the similarity between RCW 21.20.010 and Rule 10b-5. It urges us to look to RCW 21.20.010's similarity to section 12(a)(2) of the federal Securities Act of 1933, 15 U.S.C. § 77*l*(a)(2) instead. And section 12(a)(2) does not require plaintiffs to prove reliance. But our decisions do not support that approach. We have consistently identified RCW 21.20.010 with Rule 10b-5. *Kittilson*, 93 Wn.2d at 226; *Morris*, 107 Wn.2d at 323, 329-30; *Clausing*, 83 Wn.2d at 72. By contrast, we have stated that the legislature "derived" RCW 21.20.430 from section 12(a)(2). *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 125, 744 P.2d 1032 (1987); *see also Hoffer v. State*, 113 Wn.2d 148, 151, 776 P.2d 963 (1989). Because RCW 21.20.430 makes liability contingent on a violation of the antifraud provision, RCW 21.20.010, we direct our focus to that provision. LAWS OF 1977, Ex. Sess., ch. 172, § 4.

III.  The Washington Court of Appeals and the Federal Courts Have
Consistently Held That Reliance Is an Element of a Private Claim under
the Securities Act

Recognizing the connection between RCW 21.20.010 and Rule 10b-5 that

this court has previously emphasized, the Court of Appeals in these cases held that

reliance is an element of a private claim for a violation of our state Securities Act's

antifraud provision. *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*,

1 Wn. App. 2d 551, 558-59 & nn.15-16, 406 P.3d 686 (2017); *Fed. Home Loan*

*Bank of Seattle v. Credit Suisse Sec. (USA) LLC*, No. 75779-2-I, slip op. at 5-6 &

n.16 (Wash. Ct. App. Dec. 11, 2017) (unpublished),

https://www.courts.wa.gov/opinions/pdf/757792.PDF. It has maintained that view

for nearly 50 years. *See infra* Section III.A. Likewise, the federal courts have long

recognized that reliance is an element of the state claim. *See infra* Section III.B.

As the majority correctly notes, decisions of the Court of Appeals do not

have controlling authority in our court.[10] Majority at 16. But as the majority fails

to note, our practice—one that is driven by the values of stability and efficiency—

is to give those decisions respectful consideration. *See, e.g., Belling v. Emp't Sec.*

*Dep't*, 191 Wn.2d 925, 931-33, 427 P.3d 611 (2018) (declining to overrule

---

[10] *See, e.g., Fast v. Kennewick Pub. Hosp. Dist.*, 187 Wn.2d 27, 40, 384 P.3d 232
(2016) ("A Court of Appeals decision has no stare decisis effect on this court.").

9

13-year-old Court of Appeals holding without a "compelling" reason to do so). That is especially true where, as here, those decisions come to consensus on the meaning of a state statute.[11] Such consensus on the meaning of a statute—when maintained over a long period of time and without legislative objection—"argues significantly in favor" of our adopting the established interpretation. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975). The majority not only fails to recognize this stability-favoring rule in an area of business and commercial law, it also fails to give numerous published decisions of the Court of Appeals *any* consideration.[12] Finally, the majority misinterprets our decision in *Hines* in 1990, which actually played a key part in strengthening that consensus interpretation of the antifraud provision.

---

[11] *Cf. In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 154, 410 P.3d 1133 (2018) ("[O]ur current system of rigorous debate at the intermediate appellate level creates the best structure for the development of Washington common law.").

[12] The decisions that the majority declines to address are *FutureSelect Portfolio Management, Inc. v. Tremont Group Holdings, Inc.*, 175 Wn. App. 840, 867 n.67, 309 P.3d 555 (2013), *aff'd on other grounds*, 180 Wn.2d 954 (2014); *Stewart*, 122 Wn. App. at 264-66 & n.7 (2004); *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 109, 86 P.3d 1175 (2004); and *Helenius v. Chelius*, 131 Wn. App. 421, 439-44, 120 P.3d 954 (2005) (resolving whether reliance was reasonable as a matter of law).

A. Decisions of the Washington Court of Appeals before *Hines*

The Washington Court of Appeals first stated that reliance is an element of a

private claim in *Shermer* in 1970. 2 Wn. App. 845; *see also Barclays*,

1 Wn. App. 2d at 559 (recognizing as much). In that case, the court rejected the

notion that a plaintiff bringing a state securities fraud claim must prove scienter.

Upon reaching that conclusion, the court provided guidance about what a plaintiff

must prove instead. The court stated—as a holding:

> *We . . . hold* that in an action brought under RCW 21.20.010, a
> plaintiff need neither plead nor prove that defendant intended to
> deceive him by the misrepresentation or omission. It is sufficient that
> the plaintiff relied upon the misrepresentation or omission of a
> material fact.

*Shermer*, 2 Wn. App. at 857-58 (emphasis added).

Federal Home Loan and the majority contend that that guidance constitutes

dictum and urge us to disregard it. They overlook two key points, however. First,

rejecting a standard or legal test often goes hand in hand with stating the correct

standard or legal test. Second, the Court of Appeals itself later characterized its

statement in *Shermer* as a holding. Reviewing *Shermer*, that court stated, "[W]e

previously . . . *held* that proof of the scienter element of common-law fraud was

not necessary and that a damages action would lie under RCW 21.20.010 *so long

as* the plaintiff relied upon a misrepresentation or omission of a material fact."

11

*Ludwig v. Mut. Real Estate Inv'rs*, 18 Wn. App. 33, 40, 567 P.2d 658 (1977) (emphasis added), *overruled by Kittilson*, 93 Wn.2d at 225-26.

The majority grabs on to *Shermer*'s use of the term "sufficient." In its view, *Shermer* "does *not* hold that reliance is *necessary* to make out a claim. Quite explicitly, *Shermer* states that reliance is *sufficient* to make out a claim." Majority at 13 (citing *Shermer*, 2 Wn. App. at 858). The majority is here relying on a formal logician's nuanced distinction, rather than taking *Shermer* as it has been commonly understood: it was distinguishing intent to deceive, which it rejected as an element, from reliance, which it retained. Indeed, decisions following *Shermer* did not take the formal logician's approach that the majority takes, either. *Ludwig* read *Shermer* to mean that reliance (of some sort) is an element of a Securities Act claim. 18 Wn. App. at 40. The Ninth Circuit read *Shermer* the same way in *Reeves v. Teuscher*, 881 F.2d 1495, 1501 & n.12 (9th Cir. 1989).

Although *Ludwig* went on to overrule *Shermer*'s other holding, that scienter need not be proved, it never overruled *Shermer*'s holding that reliance is an element of a state securities fraud claim. 18 Wn. App. at 41-42. This court later overruled *Ludwig*'s scienter holding, thus reverting to the *Shermer* approach on that element. *Kittilson*, 93 Wn.2d at 227. We broadly stated, "The interpretation of RCW 21.20.010 first announced in *Shermer* is the better rule. The legislature

12

has not seen fit to disturb it and neither do we." *Id.* As the Court of Appeals had already recognized in *Ludwig,* the *Shermer* rule was a no-scienter, reliance-only rule. 18 Wn. App. at 40.

B. Decisions of Federal Courts before *Hines*

As mentioned immediately above, the Ninth Circuit also recognized that *Shermer* stood for the proposition that plaintiffs "were required to prove reliance to establish their . . . [Washington] securities fraud claims." *Reeves,* 881 F.2d at 1501 & n.12. The Ninth Circuit thus agreed as early as 1989 that reliance is an element of a private claim for violation of the Securities Act's antifraud provision.

Thirteen years earlier, the United States District Court for the Western District of Washington had come to the same conclusion. It stated, "The question of reliance is, of course, a vital one in establishing liability under both the [Washington] and federal securities laws." *In re Boise Cascade Sec. Litig.,* 420 F. Supp. 99, 101 (W.D. Wash. 1976). Similarly, the United States District Court for the Eastern District of Washington noted that the elements of federal and state securities fraud claims differed only with respect to scienter. *Kinsey v. Nestor Expl. Ltd.,* 604 F. Supp. 1365, 1372-73 (E.D. Wash. 1985).

We decided *Hines* shortly thereafter in 1990. 114 Wn.2d 127. I discuss that decision in greater depth in Part IV below. For now, I simply note that the

13

question in *Hines* was whether a private plaintiff suing under the Securities Act's antifraud provision must plead and prove loss causation. *Id.* at 134. We held that a plaintiff need not do so. *Id.* But in the course of deciding that issue, we looked at the statute's requirements holistically and stated, just as the Court of Appeals had in *Shermer*, that "[t]he investors *need* only show that the misrepresentations were material and that *they relied* on the misrepresentations in connection with the sale of the securities." *Id.* (emphasis added). That means we did not use the fine distinction of formal logic, necessary to the majority's decision, of finding a complete difference between "sufficient," *Shermer*, 2 Wn. App. at 857-58, and "necessary," majority at 13. We used "necessary" or "need only show" to convey what we meant.

C. Decisions of the Washington Court of Appeals after *Hines*

The Court of Appeals took this court at its word. Citing *Hines*, it has adhered to the view that reliance is an element of a private claim in several

14

published Securities Act decisions dating back to 2004.[13] That court's nine

unpublished decisions on this topic come to exactly the same conclusion.[14]

Among the unpublished decisions, *Kunkle v. Western Wireless Corp.* stands

out. Noted at 133 Wn. App. 1023, 2006 WL 1673549, at *8. The plaintiff-

appellants in that case "theorize[d] that RCW 21.20.010 imposes strict liability

regardless of reliance." 2006 WL 1673549, at *8. Relying on *Hines, Guarino*,[15]

---

[13] *See Fed. Home Loan Bank of Seattle v. RBS Sec., Inc.*, 3 Wn. App. 2d 642, 644 nn.1-2, 418 P.3d 168 (2018), *pet. for review filed*, No. 95991-9 (Wash. June 20, 2018); *see also Barclays*, 1 Wn. App. 2d at 560; *FutureSelect Portfolio Mgmt.*, 175 Wn. App. at 867 n.67; *Stewart*, 122 Wn. App. at 264-66 & n.7 (2004); *Guarino*, 122 Wn. App. at 109; *cf. Helenius*, 131 Wn. App. at 439-44 (resolving whether reliance was reasonable as a matter of law).

[14] *See Yanlu Liu v. Great Ocean Capital Holding, LLC*, No. 76576-1-I, slip op. at 6, 8-11 (Wash. Ct. App. Oct. 15, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/765761.pdf, *review denied*, 193 Wn.2d 1008 (2019); *Credit Suisse*, No. 75779-2-I, slip op. at 6; *Newcomer v. Cohen*, No. 48233-9-II, slip op. at 18 (Wash. Ct. App. May 16, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048233-9-II%20Unpublished%20Opinion.pdf, *review denied*, 189 Wn.2d 1029 (2017); *Walker v. Serven*, No. 44063-6-II, slip op. at 11 (Wash. Ct. App. Mar. 19, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2044063-6-II%20%20Unpublished%20Opinion.pdf; *Stonebridge Sec., LLC v. Devine*, noted at 138 Wn. App. 1047, 2007 WL 1464431, at *5; *Alexander v. Cadaret, Grant & Co.*, noted at 137 Wn. App. 1059, 2007 WL 1041380, at *4; *Trimble v. Holmes Harbor Sewer Dist.*, noted at 137 Wn. App. 1055, 2007 WL 959899, at *5; *Kunkle v. W. Wireless Corp.*, noted at 133 Wn. App. 1023, 2006 WL 1673549, at *8; *Ogdon v. Byron Nelson Co.*, , noted at 123 Wn. App. 1009, 2004 WL 1932661, at *3.

[15] *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 109, 86 P.3d 1175 (2004).

and *Shermer*, the Court of Appeals rejected that theory. *Id.* at *8 n.34. The

"[a]ppellants also argue[d] that their claims parallel Section 12(2) of the Securities

Act of 1933, . . . which makes sellers liable to buyers for misrepresentation and

which does not require proof of reliance to establish a claim"—an argument that

Federal Home Loan repeats in this case.[16] *Id.* at *8; *see supra* p. 8 n.8. The Court

of Appeals rejected that argument; it explained that the antifraud provision more

closely resembles Rule 10b-5 than section 12(2). *Kunkle*, 2006 WL 1673549, at

*8. The fact that the Court of Appeals declined to publish that decision shows that

it considered the analysis not new, not clarifying, and not important. RAP 12.3(d)

(identifying criteria for publishing decisions and expressly stating that the court

should consider whether "the decision determines an unsettled or new question of

law"; whether the decision "modifies, clarifies or reverses an established principle

of law"; whether the decision is "importan[t]"; and whether the decision stands "in

conflict with a prior [decision]").[17]

---

[16] Section 12(2) was "later renumbered section 12(a)(2)." Appellant's Opening Br. at 14, No. 75779-2-I (Wash. Ct. App. (2017)).

[17] The majority argues that our observation that the Court of Appeals believed that this point of statutory interpretation was well-settled law is problematic because it "degrades the distinction between published and unpublished decisions." Majority at 16 n.5. But it is RAP 12.3(d), cited and partly quoted in text, that establishes the

At the time, the Court of Appeals had over 35 years of case law holding that reliance is an element of an RCW 21.20.010 claim. Now it has nearly 50.[18]

D. Decisions of Federal Courts after *Hines*

The federal courts' decisions say the same thing. They uniformly recognize that Washington law requires a plaintiff alleging a violation of the state Securities Act's antifraud provision to prove reliance.[19]

---

distinction between published and unpublished decisions. Under that rule, the appellate court assesses preexisting law and determines whether its decision is new, clarifying, or important against the backdrop of that preexisting law. As to *Kunkle* in particular, there is nothing problematic with my crediting the Court of Appeals for its recognition of what is undeniably true: against the backdrop of the existing Securities Act jurisprudence, there was nothing new, clarifying, or important in the court's analysis of the legal issues in that case.

[18] Appearing as amicus curiae, the Department of Financial Institutions, which oversees state securities regulation and enforcement, argues that the Court of Appeals' long-standing rule could hamper its ability to protect investors. "[B]ecause the Department uses the same language in RCW 21.20.010(2) for its administrative enforcement actions, Division One's interpretation could have an unintended impact on the Department's ability to pursue fraud actions before investors have relied to their detriment." Br. of Amicus Curiae Wash. State Dep't of Fin. Inst. at 4-5. The problem with the department's argument is that it relies on a faulty premise—namely, that the Court of Appeals holding below is new. As explained above, it is not. And as amicus curiae North American Securities Administrators Association further points out, "it is universally accepted across all federal and state jurisdictions that reliance is never required when a governmental plaintiff brings a public enforcement action under a federal or state securities law." Br. of N. Am. Sec. Adm'rs Ass'n at 4.

[19] *See U.S. Bank Nat'l Ass'n v. Sterne, Agee & Leach, Inc.*, 281 F. App'x 740, 742 (9th Cir. 2008) (court order); *Nuveen Quality Income Mun. Fund v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 825 (9th Cir. 2008) (court order); *Moore v. Thornwater*

17

*Co.*, 155 F. App'x 257, 258 (9th Cir. 2005) (court order); *Johnson v. Riviera*, noted at 77 F.3d 489, 1996 WL 56169, at *1 (9th Cir. 1996) (court order); *Andresen v. Hunt*, noted at 951 F.2d 358, 1991 WL 268716, at *3 (9th Cir. 1991) (court order) (reading *Kittilson* as affirming *Shermer*'s reliance holding); *Braddock v. Zaycon Foods LLC*, No. C16-1756 TSZ, 2017 WL 5989487, at *2 (W.D. Wash. Apr. 21, 2017) (court order); *Somerset Commc'ns Grp., LLC v. Wall to Wall Advert., Inc.*, No. C13-2084-JCC, 2014 WL 1794676, at *8 (W.D. Wash. May 6, 2014) (court order); *Sung v. Mission Valley Renewable Energy, LLC*, No. CV-11-5163-RMP, 2013 WL 790509, at *2, *4-7 (E.D. Wash. Mar. 4, 2013) (court order) (denying motion for summary judgment because of genuine issue of material fact about reliance); *Graham-Bingham Irrevocable Tr. v. John Hancock Life Ins. Co. USA*, 827 F. Supp. 2d 1275, 1284 (W.D. Wash. 2011); *King County v. Merrill Lynch & Co.*, No. C10-1156 RSM, 2011 WL 643166, at *2, 5 (W.D. Wash. Feb. 18, 2011) (court order); *Malone v. Clark Nuber, PS*, No. C07-2046RSL, 2008 WL 2545069, at *14-15 (W.D. Wash. June 23, 2008) (court order); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d at 1297, 1301-03; *Becker v. Allcom, Inc.*, No. C04-0958L, 2005 WL 1654524, at *3-5 (W.D. Wash. July 12, 2005) (court order); *Goel v. Jain*, 259 F. Supp. 2d 1128, 1139 (W.D. Wash. 2003); *In re Intermec Corp. Sec. Litig.*, No. C90-7832, 1991 WL 207370, at *3 (W.D. Wash. June 17, 1991) (court order); *cf. Swartz v. KPMG LLP*, 476 F.3d 756, 764, 766-67 (9th Cir. 2007) (permitting plaintiff to add state securities fraud claims on remand given the court's holding that plaintiff pleaded "allegations that, if proven, could potentially ground a finding of reasonable reliance"); *McGonigle v. Combs*, 968 F.2d 810, 823-24 (9th Cir. 1992) (describing plaintiff's proposed instruction that stated that plaintiff must prove transaction causation).

Likewise, Massachusetts's Appeals Court has recognized that Washington law requires a showing of reliance. *Eagle Fund, Ltd. v. Sarkans*, 63 Mass. App. Ct. 79, 84, 823 N.E.2d 783 (2005) (citing *Hines*, 114 Wn.2d 127). Although this out-of-state citation may appear superfluous at first, it is actually quite persuasive because it demonstrates that our decisions make clear to a jurist unacquainted with Washington law that private claims brought under RCW 21.20.010 do require a showing of reliance.

A national treatise has also recognized that Washington law requires a showing of reliance. 12A JOSEPH C. LONG, MICHAEL J. KAUFMAN & JOHN M. WUNDERLICH, BLUE SKY LAW § 12:5 n.21 (2018) ("State-by-State Charts for State Securities Acts") (citing *Hines*).

18

In one case, the Ninth Circuit even declined to certify the reliance question to this court, explaining, "Washington appellate courts have held that reliance is an element of a claim under the Washington State Securities Act." *Nuveen Quality Income Mun. Fund v. Prudential Equity Grp., LLC*, 262 F. App'x 822, 825 (9th Cir. 2008) (citing *Hines*, 114 Wn.2d 127; *Stewart*, 122 Wn. App. 258). Those holdings "clearly determined that reliance is an element of a claim under the [Securities Act]." *Id.* "Certification is therefore inappropriate," the court concluded. *Id.*

The majority argues that the Ninth Circuit's certification decision "says nothing about the nature of the law itself." Majority at 16 n.5. The majority fails to appreciate, however, that a federal court's certification decision necessarily requires an assessment of state law. Certification is appropriate only when "the local law has not been clearly determined." RCW 2.60.020. As of 10 years ago, the Ninth Circuit believed that our state law had been clearly determined.

IV. We Interpreted the Antifraud Provision in *Hines* and Stated That Transaction Causation—Meaning Reliance—Is an Element of a Private Claim under the Securities Act

A. *Hines* Stated That Transaction Causation—That Is, Reliance—Is an Element of a Private Claim under the Securities Act

As noted, we have spoken on this topic, too. In 1990, in *Hines*, we considered an issue closely related to today's issue: Must a plaintiff plead and prove loss causation when bringing a private claim under the Securities Act's antifraud provision? The answer, we held, was no.

In *Hines*, investors sued the officers and directors of a corporation. They claimed that the defendants had violated the Securities Act's antifraud provision by failing to disclose the CEO's medical condition. 114 Wn.2d at 130. The defendants did not deny that the CEO's health was a material fact. *Id.* at 134. Instead, they "argue[d] that before they can be liable under RCW 21.20.010, the investors must establish that defendants' misrepresentations were the proximate reason for their investments' decline in value." *Id.* (footnote omitted). In other words, they argued that plaintiffs had to prove loss causation.

We rejected the defendants' argument to adopt the element of loss causation. We stated, "The investors *need only show* that the misrepresentations were material and that *they relied* on the misrepresentations in connection with the sale

20

of the securities." *Id.* (emphasis added). We added, "The violation is in the misrepresentation itself; it is not how the misrepresentation affected the price of the stock. RCW 21.20.430(1) provides rescission as the basic remedy. Thus an investor who is wrongfully *induced* to purchase a security may recover his investment without any requirement of showing a decline in the value of the stock." *Id.* at 135 (emphasis added).

In other words, we rejected the argument for loss causation and instead endorsed a rule of *transaction causation*.

Critically, transaction causation means reliance. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005); *Currie v. Cayman Res. Corp.*, 835 F.2d 780, 785 (11th Cir. 1988).

B. *Hines* Accurately Reflected the Established Interpretation of the Securities Act in 1990 and Remains Persuasive Today

Federal Home Loan urges us to disregard our statement that plaintiffs "need" to prove "reli[ance]" and "induce[ment]" as "just dictum." *Hines*, 114 Wn.2d at 134-35; Suppl. Br. of Appellant at 2. The majority agrees, calling *Hines'* statement "simply there, unadorned." Majority at 14.

But our statement in *Hines* reflected the uncontroversial and well-established understanding at the time that a plaintiff must prove reliance. *See supra* pp. 8-13.

21

And as discussed above, rejecting a legal standard often goes hand in hand with stating the correct standard or legal test. *See supra* p. 11. Indeed, other state and federal courts understood us to do exactly that in *Hines*. They relied on *Hines* for the rule that the Securities Act requires a plaintiff to plead and prove reliance in a private claim for violation of the antifraud provision. *See supra* pp. 13-18.

V.    Our Cases Following *Hines* Also State That Reliance Is an Element of a Private Claim under the Securities Act

Our subsequent Securities Act cases recite the same rule. For example, in *Go2Net*, a case about equitable defenses, the jury found that the plaintiff had "relied on [the defendant's] material misrepresentation or omission regarding the ownership of his company" when purchasing the stock of that company. 158 Wn.2d at 250. We then stated that those findings "established" that the defendant had violated the Securities Act's antifraud provision. *Id.* Later in the decision, we again characterized those findings as establishing a violation of the Securities Act. *Id.* at 251.

*FutureSelect Portfolio Management, Inc. v. Tremont Holdings*, a case presenting questions about jurisdiction and choice of law, used the same rule. 180 Wn.2d 954, 331 P.3d 29 (2014). In the choice-of-law portion of our analysis, we adopted section 148 of the *Restatement (Second) of Conflict of Laws* for claims

22

alleging violations of the antifraud provision. *Id.* at 968. By its terms, section 148 applies only when the plaintiff has relied on the defendant's misrepresentations. RESTATEMENT § 148. Our adoption of that provision makes the most sense if reliance is indeed an element of a private claim under the Securities Act. As we stated then, "Under § 148, . . . we must consider (1) the place where *plaintiff acted in reliance on the representations . . . .*" 180 Wn.2d at 969 (emphasis added) (citing RESTATEMENT § 148). Moreover, we observed that in the case before us, "Washington was the place where [the plaintiff] acted in reliance on the representations." *Id.*

Thus, our decisions—like those of the Court of Appeals and the federal courts—consistently treat reliance as an element of a state securities fraud claim.[20]

---

[20] The majority contends that *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) is to the contrary. Majority at 15-16. This is incorrect. In *Kinney*, we analyzed whether a trial court correctly granted a defendant's CR 12(b)(6) motion to dismiss. 159 Wn.2d at 842-46. Tracking the language of RCW 21.20.010, we stated, "The statute has two essential elements: (1) a fraudulent or deceitful act committed (2) in 'connection with the offer, sale or purchase of any security.'" *Id.* at 842 (quoting RCW 21.20.010). As with the language of RCW 21.20.010 itself, the first prong of that test—"a fraudulent or deceitful act"—has a broad reach capable of incorporating reliance. We also noted that the fraudulent act at issue in that case—an omission about the financial condition of a corporation—*induced* the plaintiff's payment. *Id.* at 845; *see also id.* at 839 (stating that the plaintiffs claimed that the defendant "wrongfully induced their payment"). Thus, it is incorrect to read *Kinney* as having silently overruled the reliance requirement.

VI. The Legislature Never Disagreed with this Judicial Consensus That Reliance Is an Element of a Private Claim under the Securities Act

The legislature has not reacted to that consensus. Indeed, "since Washington courts began recognizing a reliance requirement in 1970, the legislature has relevantly amended the [Securities Act] eight times. Not once did it modify the requirement that reliance is a required element. This is telling." *Barclays*, 1 Wn. App. 2d at 559-60 & nn.20-21 (footnotes omitted) (citing *Shermer*, 2 Wn. App. at 858; LAWS OF 1998, ch. 15, § 20; LAWS OF 1986, ch. 304, § 1; LAWS OF 1985, ch. 171, § 1; LAWS OF 1981, ch. 272, § 9; LAWS OF 1979, Ex. Sess., ch. 68, § 30; LAWS OF 1977, Ex. Sess., ch. 172, § 4; LAWS OF 1975, 1st Ex. Sess., ch. 84, § 24; LAWS OF 1974, Ex. Sess., ch. 77, § 11).

This is telling because our court has long recognized that the legislature's silence is an indication of acquiescence in a judicial interpretation of a statute. *See, e.g., Buchanan v. Int'l Bhd. of Teamsters*, 94 Wn.2d 508, 511, 617 P.2d 1004 (1980). We presume that the legislature is aware of published appellate court decisions.[21] Because we presume that the legislature is aware of published

---

[21] *Buchanan*, 94 Wn.2d at 511; *Friends of Snoqualmie Valley v. King County Boundary Review Bd.*, 118 Wn.2d 488, 496, 825 P.2d 300 (1992) ("The Legislature is presumed to be aware of judicial interpretation of its enactments." (citing *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887, 652 P.2d 948 (1982))); *State v. J.P.*, 149 Wn.2d 444,

24

appellate court decisions, the legislature's failure to amend a statute after an appellate court has interpreted that statute demonstrates acquiescence in its interpretation. *Buchanan*, 94 Wn.2d at 511; *State v. Ervin*, 169 Wn.2d 815, 825-26, 239 P.3d 354 (2010) (recognizing legislative acquiescence in published Court of Appeals decision).

That rule applies with greater force when the legislature subsequently amends the interpreted statute but declines to alter the interpreted portion. *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 181-82, 149 P.3d 616 (2006) (plurality opinion); *Friends of Snoqualmie Valley v. King County Boundary Review Bd.*, 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992).

Applying those rules to this case, the legislature has certainly acquiesced in the Washington courts' interpretation of the antifraud provision. Forty-nine years have passed since the Court of Appeals first held that reliance was an element of a claim in *Shermer*. Twenty-nine years have passed since this court held that reliance was an element of such a claim in *Hines*. Both of those periods far exceed the 17-year period that had passed in *Buchanan* and that counseled against

---

454, 69 P.3d 318 (2003) (stating that the legislature was "on notice" of published Court of Appeals decision) (collecting cases).

reexamination of our prior ruling in that case.[22] *See* 94 Wn.2d at 511. And the legislature's eight amendments to other provisions of the Securities Act indicate that it "has had ample opportunity" to express its disagreement with the reliance requirement. *1000 Friends of Wash.*, 159 Wn.2d at 181.[23]

VII. The Statute's Text, Context, and History Support Retaining Reliance as an Element of a Private Claim under the Securities Act; The Majority's Conclusion to the Contrary Undermines the Purpose of the Securities Act

A. The Statute's Text, Context, and History Support Retaining Reliance as an Element of a Private Claim under the Securities Act

The majority overturns this settled law. It holds that purchasers such as Federal Home Loan—which purchased securities from Credit Suisse before even

---

[22] Even if *Shermer* and *Hines* did not set out authoritative statements of law about the reliance requirement, as the majority contends, *Stewart* certainly did. *See* 122 Wn. App. at 264-66 & nn.7, 9 (holding that reasonable reliance is an element of a private state Securities Act claim). The majority does not ask whether the legislature acquiesced to that authoritative holding. Instead, the majority announces that only this court matters, majority at 18, ignoring the fact that the public, "[s]tatewide agencies[,] and other entities cannot choose to ignore a published judicial decision," *Arnold*, 190 Wn.2d at 154.

[23] This case concerns statutory interpretation in the commercial transaction context, two factors that favor stability. *See Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 729 n.9, 381 P.3d 32 (2016); *accord Key Design, Inc. v. Moser*, 138 Wn.2d 875, 880-84, 983 P.2d 653, 993 P.2d 900 (1999). The value of stability in the law in this context is certainly weightier than in some other contexts. For example, erroneous interpretations of individual rights and protections cannot be upheld simply because the deprivation of the right or protection is long-standing. *See, e.g., In re Pers. Restraint of Andress*, 147 Wn.2d 602, 604, 56 P.3d 981 (2002) (revisiting long-standing interpretation of criminal statute based in part on "illogic" of the established interpretation). And legislative acquiescence has no place in constitutional interpretation.

26

hearing Credit Suisse's alleged misrepresentations, and which purchased securities from Barclays despite "both internal and external warnings that put [Federal Home Loan] on notice that it could not solely or reasonably rely" on Barclays' alleged misrepresentations—are entitled to prevail. *Barclays*, 1 Wn. App. 2d at 577.

The first problem with the majority's approach is, as I explained above, that it basically ignores the prior decisions of this court, the Court of Appeals, and the federal courts.

The next problem with the majority's approach is that it dismisses the antifraud provision's historical context that supports those decisions. As explained above, the text of RCW 21.20.010 is patterned after Rule 10b-5. Rule 10b-5 has always been understood to have a reliance requirement. As the United States Supreme Court has recognized, common law fraud claims and statutory securities fraud claims, although distinct, share a general antifraud character. *Basic Inc.*, 485 U.S. at 243 (Blackmun, J., majority), 253 (White, J., concurring in part and dissenting in part) ("In general, the case law developed in this Court with respect to §10(b) and Rule 10b-5 has been based on doctrines with which we, as judges, are familiar: common-law doctrines of fraud and deceit."); *see also Dura Pharm.*, 544 U.S. at 341. As the United States Supreme Court further recognized, "reliance is and has long been an element of common-law fraud." *Basic Inc.*, 485 U.S. at 243

27

(citing RESTATEMENT (SECOND) OF TORTS §525 (AM. LAW. INST. 1977); W. PAGE

KEETON ET AL., PROSSER AND KEETON ON LAW OF TORTS § 108 (5th ed. 1984)).

Given that that is true of common law fraud in Washington, RCW 21.20.010's use

of "fraud" and "defraud" certainly could incorporate the reliance element

embedded in those terms' common law background.

Additionally, the phrase "in connection with," which introduces all three

subsections of RCW 21.20.010 (and Rule 10b-5), establishes a causal connection

requirement. *See Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017,

1025-27 (9th Cir. 1999) (surveying cases and concluding that the phrase means

that "[t]he court should consider whether the plaintiff has shown some *causal*

*connection* between the fraud and the securities transaction in question" (emphasis

added) (citing *In re Fin. Corp. of Am. S'holder Litig.*, 796 F.2d 1126, 1130 (9th

Cir. 1986))); Barbara Black, Commentary, *The Second Circuit's Approach to the*

*'in Connection with' Requirement of Rule 10b-5*, 53 BROOK. L. REV. 539, 541

(1987) (explaining that the effect of Rule 10b-5's "in connection with" requirement

is that "the court may determine that the fraud did not cause the injury complained

of, and therefore it was not 'in connection with' the securities transaction" and

describing how the Second Circuit has applied that rule with respect to loss

causation).

28

Finally, even if none of the above were true, problems remain in the

majority's statutory interpretation. Despite the majority's claim that it follows

*Department of Ecology v. Campbell & Gwinn LLC*, 146 Wn.2d 1, 12, 43 P.3d 4

(2002), the majority improperly relies on commentary to interpret the plain

meaning of RCW 21.20.010. *See* majority at 7. It then takes pains to note another

nonlegislator's commentary. But the commentary is not to the Securities Act; it is

commentary to a proposed—and rejected—part of a separate law, enacted 12 years

after the Securities Act, that the majority itself admits offers "[l]ittle, if anything."

*Id.* at 9 n.2.

To be sure, there is a split of authority among the state courts on whether

private claims under statutes containing the exact same language—patterned after

Rule 10b-5—contain a reliance element. *See* 12A JOSEPH C. LONG, MICHAEL J.

KAUFMAN & JOHN M. WUNDERLICH, BLUE SKY LAW § 12:5 (2018) ("State-by-

State Charts for State Securities Acts"). So if we were addressing this issue for the

first time, we could depend a lot more on dictionaries and we would have a hard

job. But we are writing based on a long history of statutory interpretation of words

that have clearly, and justifiably, been construed to incorporate an element of

reliance. There is no compelling reason to overturn this settled law.

### B. The Majority's Interpretation Undermines the Purpose of the Securities Act

There is one more reason to reject the majority's interpretation: it runs counter to the legislature's mandate that we interpret the Securities Act "to make uniform the law of [the] states . . . and to coordinate the interpretation and administration of [the Securities Act] with the related federal regulation." RCW 21.20.900.

The long-standing interpretation that the majority discards used to advance uniformity and coordination with other jurisdictions. The coordination with the related federal regulation, Rule 10b-5, is clear—our holding maintains consistency between state and federal law with respect to the reliance element of a securities fraud claim.

As to uniformity with other states, the majority correctly notes that there is a split of authority among the states with respect to reliance as an element. Majority at 11. Thus, if we look solely at reliance's status as an element of the claim, neither affirming nor reversing the Court of Appeals in this case would have much effect on uniformity.

The defendants, however, urge us not to look at that element alone when we compare our statutory scheme to those of other states. They point out that although

considerable variation exists in the details of state securities laws, most states have established a carefully balanced scheme that pairs exposure to liability with various defenses to liability. *See generally* 12A JOSEPH C. LONG, MICHAEL J. KAUFMAN & JOHN M. WUNDERLICH, *supra*, at 29. If Washington discards the reliance element, exposure to liability in Washington would, in their view, greatly outstrip potential exposure in other states. Washington would become an outlier.

I agree with the defendants that we must consider the parties' arguments in the context of our other decisions interpreting the elements of and defenses to a state securities fraud claim. To begin, our statute bars defendants from asserting due diligence or reasonable care defenses. RCW 21.20.010, .430; *cf.* 15 U.S.C. § 77*l*(a)(2). Our court has held that equitable defenses are not available either. *Go2Net*, 158 Wn.2d at 250. Our court has further held that a plaintiff does not have to prove scienter or loss causation. *Kittilson*, 93 Wn.2d at 227; *Hines*, 114 Wn.2d at 134-35. By rejecting the reliance requirement today, the majority takes Washington out of the ranks of states that have maintained carefully balanced statutory schemes.

That interpretation goes beyond "protecting investors," our other interpretive guide. *Kinney v. Cook*, 159 Wn.2d 837, 844, 154 P.3d 206 (2007) (citing *Hoffer v. State*, 113 Wn.2d 148, 152, 776 P.2d 963 (1989)). It would instead provide a

31

recovery to new investors whose investment choices are either completely unrelated to the defendant's alleged misconduct, as in *Credit Suisse*, or insufficiently related to the alleged misconduct to have had any impact on the investment decision, as in *Barclays*. And it will be at the expense of old investors, who will be left footing the bill.[24] Roberta S. Karmel, *When Should Investor Reliance Be Presumed in Securities Class Actions?*, 63 BUS. LAW. 25, 30 (2007). That outcome is especially unnecessary in light of the authority of the Department of Financial Institutions to police misconduct within the securities industry. *See* RCW 21.20.390, .395.

## CONCLUSION

The majority overturns settled law requiring private plaintiffs to plead and prove reliance in state securities fraud claims. As a result of this upheaval, if Federal Home Loan proves its case, it will recover an eight percent annualized

---

[24] The majority argues that fraud hurts all investors because allegations of fraud drive down stock prices. Majority at 10 (citing Urska Velikonja, *The Cost of Securities Fraud*, 54 WM. & MARY L. REV. 1887, 1901 (2013)). But interpreting a reliance element out of the Securities Act privileges new investors over old investors despite the fact that all have been harmed by the loss to the corporation's value. The incongruity makes no sense. By contrast, it makes sense for the legislature to have chosen to privilege investors who would not have been made their investments but for the corporation's deceptive conduct.

return on bad investments that it alone decided to make—and it will do so at the

expense of other investors.

I respectfully dissent.

_Gordon McCloud, J._

_Owens, J._

_Madsen, J._